UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-00664-MR

| | | |
|---|---|---|
| TRAVON LEVI WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| RONALD COVINGTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on the following:

(1) Defendants' Motion for Summary Judgment [Doc. 64];

(2) Plaintiff's "Motion Requesting to Withdraw Defendants' Motion for Summary Judgment;" [Doc. 69];

(3) Plaintiff's "Motion to Extend the Deadline for Summary Judgment;" [Doc. 70]; and

(4) Plaintiff's "Appendix Motion for Summary Judgment;" [Doc. 72].

# I. PROCEDURAL BACKGROUND

Pro se Plaintiff Travon Levi Woods ("Plaintiff") is a North Carolina inmate currently incarcerated at Bertie Correctional Institution in Windsor, North Carolina. Plaintiff filed this action on December 13, 2018, pursuant to 42 U.S.C. § 1983, against Defendants Ronald Covington, identified as a

Captain at Scotland Correctional Institution ("Scotland"); FNU Barnes, identified as a Unit Manager at Scotland; FNU Hunt,[1] identified as a correctional officer at Scotland; and the North Carolina Department of Public Safety (NCDPS). [Doc. 1 at 1-2]. Plaintiff claimed that Defendants used excessive force in violation of his rights under the Eighth Amendment.[2] [Id. at 3]. Plaintiff did not specify whether he was suing Defendants in their individual or official capacities, or both. [See id. at 1-2]. Plaintiff's claim survived initial review under 28 U.S.C. §§ 1915(e)(2) and 1915A. [Doc. 8].

On November 14, 2019, the Court allowed Plaintiff's motion to amend his complaint. [Doc. 20]. In his Amended Complaint, Plaintiff maintained his claims against Defendants Covington, Barnes, and Hunt and added FNU McMillan, identified as a nurse at Scotland, as a Defendant in this matter. [Doc. 17]. In his Amended Complaint, Plaintiff asserted that his claims against Defendants are in their individual and official capacities. [Id. at 1]. Plaintiff alleged that Nurse McMillan documented that Plaintiff was not

---

[1] Defendant Barnes has since been identified as Daniel Barnes and Defendant Hunt has since been identified as Alford Hunt. The Court will instruct the Clerk to update the docket in this matter accordingly.

[2] Plaintiff also purported to bring a claim under the Fifth Amendment's Due Process Clause related to prison grievance procedure. [Doc. 1 at 3]. This claim, along with Defendant NCDPS, were dismissed on initial review for the reasons stated in the Court's Order. [Doc. 8 at 3-5].

injured although Plaintiff told her that he was "assaulted and bruised." [Id. at 3]. Plaintiff also alleged that Nurse McMillan saw Plaintiff the next day for an emergency sick call and she denied Plaintiff's injuries, "even as she painfully applied pressure to all the bruises and swollen areas." [Id. at 4]. Plaintiff, however, never served Defendant McMillan and the Court dismissed McMillan as a Defendant after notice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. [Docs. 46, 62].

On January 27, 2021, Defendants moved for summary judgment. [Doc. 64]. In support of this motion, Defendants submitted a memorandum, various affidavits and prison records, including the relevant Incident Report, and the NCDPS Use of Force Policy. On February 2, 2021, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 67]. Plaintiff sought and received an extension of time to respond to Defendants' motion.[3] [Doc. 68; 2/23/2021 Docket Entry]. In response to Defendants' motion, Plaintiff submitted his

---

[3] Thereafter, Plaintiff again moved for an extension of time to respond to Defendants' motion [Doc. 70], which the Court will grant *nunc pro tunc*. Plaintiff also moved to "withdraw" Defendants' summary judgment motion "due to violation of F.R.C.P. 56(b)" based on Plaintiff's incorrect belief that Defendants' motion was untimely. [See Doc. 69]. The Court will deny this motion.

3

own affidavit; various prison records, including grievance and disciplinary hearing records, the relevant Incident Report; the NCDPS Policies on Use of Force[4] and Conduct of Employees; Scotland's Policies on Use of Force and Cell Restriction Procedures for Disruptive Inmates; Defendants' discovery response; and the Affidavit of another inmate, Freddie Lee Williams. [Docs. 72, 72-1].

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings,

---

[4] Plaintiff correctly points out that the NCDPS Use of Force policy he submitted was issued on March 8, 2011 and is likely "outdated." [Doc. 72-1 at 46]. Defendants submit the same version of this policy in support of their motion. [See Doc. 66-2]. As such, the parties apparently agree that this policy was in effect at the time of the incident at issue.

4

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken

5

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

**III. FACTUAL BACKGROUND**

The forecast of evidence in the light most favorable to the non-movant is as follows:

Plaintiff is a prisoner of the State of North Carolina. [See Doc. 66-1 at ¶ 7: Covington Dec.]. On July 19, 2018, Plaintiff was housed at Scotland Correctional Institution. [Id. at ¶ 9]. Defendant Covington was a Captain at Scotland and the officer-in-charge of the shift during the incident at issue. [Id. at ¶ 11]. Defendant Covington was monitoring inmates eating lunch in the dining hall when Plaintiff entered the dining hall, grabbed his tray of food, and headed toward a table to eat. While walking to a table, Plaintiff "call[ed] officer Esholia Nealy and start[ed] singing to her." [Doc. 66-1 at ¶ 12; Doc. 72-1 at ¶ 7: Plaintiff Dec.]. Plaintiff considers himself a music artist. Plaintiff gave Officer Nealy "only a brief sample of [his] vocals" and then started to eat his food. Other inmates at Plaintiff's table then warned Plaintiff about Defendant Covington, who was standing right behind Plaintiff. Plaintiff told the other inmates, "im not worried bout him, im not bothering him. What he

6

gone do, write me up, seg me? Im not scared of the hole. I just rather be there." Plaintiff continued eating. [Id. at ¶ 7]. Plaintiff again called to Officer Nealy as she walked toward Plaintiff's table and told her, "hey Nealy, ima be your favorite music artist." [Id. at ¶ 8]. Defendant Covington, who was still standing behind Plaintiff, said, "that's it. Get up." [Id.]. Plaintiff took two "real quick" bites of his food, a "quick swallow" of his drink, and got up and walked toward Defendant Covington. Someone ordered Plaintiff to put his hands on the wall and Plaintiff complied. Plaintiff then laughed and said, "this is messed up. I didn't do nothing, this crazy," and laughed again. [Id. at ¶ 9]. Defendant Covington removed his pepper spray canister and said, "laugh one more time and im gone spray your a**," while another officer told Plaintiff to "step back from the wall and keep your hands on the wall." [Id. at ¶ 10]. Plaintiff responded, "Aww man, this is too crazy. You gone spray me for laughing? This wild. They moved me to a messed up camp." Then Plaintiff chuckled. [Id.].

Unidentified officers finished a "pat-down" of Plaintiff and, on Defendant Covington's order, Defendant Hunt applied handcuffs to Plaintiff behind his back.[5] [Doc. 72-1 at ¶ 11; Doc. 66-8 at ¶¶ 6-7: Hunt Dec.]. Plaintiff

---

[5] In his summary judgment materials, Plaintiff at times fails to identify the officer or officers engaging in the alleged conduct, including whether the subject officers are Defendants in this matter. [See Doc. 72-1 at 4-]. To the extent possible the Court discerns which officer,

7

cooperated completely, and Defendants Covington, Barnes, and Hunt walked Plaintiff down a hallway. [Id.; Doc. 66-8 at ¶ 8]. At this time, Plaintiff "ranted" about an assault and battery case he had "going on" against a correctional officer at his last place of incarceration and said "it [would] be a replay if it happens here," all while Plaintiff was "laughing at them without disrespecting them at all." [Doc. 72-1 at ¶ 12]. Plaintiff was brought to a cell in Receiving with a shower in it. Defendants Covington, Barnes, and Hunt walked into the cell after Plaintiff. [Id. at ¶ 13; Doc. 66-8 at ¶¶ 8, 10]. Plaintiff turned around quietly toward the officers waiting for his next instruction and Defendant Barnes, who was closest to Plaintiff, swung at Plaintiff's face with his right hand, but Plaintiff ducked and stepped backwards, causing Barnes to miss. [Id.]. Barnes then rushed Plaintiff and knocked him to the ground "while the other [officer struck Plaintiff] with his baton/nightstick in the back of [Plaintiff's] head several times" and jabbed Plaintiff in the ribs several

---

including which Defendant, Plaintiff is referencing by cross-referencing Plaintiff's original Complaint, which was signed under penalty of perjury, and Defendants' summary judgment materials. See Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021) (holding the district court erred in failing to consider a prisoner plaintiff's verified, though superseded, complaints as affidavits on summary judgment).

times.[6,7] [Id. at ¶ 13]. As Plaintiff was assaulted, "restrained, humble, meek, and cooperative," he told the officers, "get it in. Go ahead and get it in." [Id.]. Defendant Covington told Defendants Barnes and Hunt to "get him up" and "spray him if he start acting crazy." [Id. at ¶ 14]. Plaintiff stood still and responded, "I'm not gone act crazy." [Id. at ¶ 15]. Two unidentified officers, likely Barnes and Hunt, sprayed Plaintiff with pepper spray for "a couple of seconds." Plaintiff tried to avoid the spray by closing his eyes and dropping his head, causing his dreadlocks to shield his face. When the stream of spray stopped, Plaintiff breathed, "only to catch a long, deep inhalation full of 'bear spray,'" which is carried only by officers with the rank of sergeant and above.[8] [Id.]. Plaintiff was completely blinded by the spray. [Id. at ¶ 16]. Someone directed Plaintiff to turn on the shower. Eventually Plaintiff was

---

[6] In his original Complaint, Plaintiff alleged that Barnes used his hands and a nightstick to physically assaulted Plaintiff using and that Defendant Hunt "maced [Plaintiff] and neglected to stop [the assault]." [Doc. 1 at 3; see also Doc. 17 at 3: Amended Compl.].

[7] Pursuant to NCDPS Use of Force Policy .1503(f)(2), "[i]ntentional powered overhead strikes with a baton to vital areas are prohibited unless reasonably necessary to defend oneself or others from imminent threat of death or serious bodily injury. Vital areas include the head, throat, neck, solar plexus, spine, kidneys, groin, or coccyx. However, in extreme circumstances, staff members are expected to use any means available to protect themselves from assault and injury." [Doc. 72-1 at 51].

[8] Pursuant to NCDPS Use of Force Policy .1503(d), "[a]n officer is prohibited from using force solely as a result of verbal provocation." Further, "[a]n officer shall not strike or attempt to strike an inmate who has abandoned his/her resistance or who is effectively restrained. The use of force as punishment is strictly prohibited." [Doc. 72-1 at 48].

able to locate the button and turned the shower on, washing off as much of the spray as he could while fully clothed and restrained. Plaintiff felt burning everywhere and "let out a blood curtling [*sic*] scream." [Id. at ¶ 17].

Plaintiff, who was sopping wet and still fully clothed, was removed from the cell he showered in and moved to the cell next door. [Id. at ¶ 19]. An officer removed Plaintiff's handcuffs when Plaintiff was at the door of that cell. [Id.]. An officer handed Plaintiff some fresh clothes, which were a size too small for Plaintiff. [Id. at ¶¶ 18, 20]. Plaintiff dried off and tried to put on the boxer shorts that he was provided, but they were "way too small." He took them off and dressed in the other clothes. [Id. at ¶ 20]. Plaintiff was restrained again, this time through the cell door. He stepped out of the cell "for the officers to do a swift, inaccurate, and insufficient photography for the incident/injury report," as Plaintiff dried his tears and wiped "at the burn in [his] eyes the whole time."[9] [Id. at ¶ 21]. At this time, Plaintiff's private area was burning badly, and he asked to see a nurse. [Id.]. No one responded to this request. [See id.]. One of the officers told Plaintiff to put on his wet shoes. Plaintiff said that he did not want to and would go barefoot. [Id. at ¶ 23]. Defendant Covington told Plaintiff, "put them on or ima spray you." [Id.

---

[9] In an August 1, 2019 Witness Statement, Correctional Lieutenant Wanda Hasty stated that she attempted to take pictures of Plaintiff "after a Use of Force O.C. Pepper Spray in Receiving but he refused to take pictures." [Doc. 72-1 at 34].

at ¶ 24]. Plaintiff put on the wet shoes and was led to medical. [Id.]. After Plaintiff provided his identifying information to a female nurse, she did not ask Plaintiff anything regarding his injuries. [Id.]. Plaintiff rocked back and forth in the fetal position as the nurse attempted to get a blood pressure reading. Plaintiff told her, "Im on fire. I'm not tryina be funny or nothing but my nuts burn from the spray." [Id.]. Defendant Covington threatened to spray Plaintiff if he said anything else. Plaintiff remained quiet for the remainder of the medical session. [Doc. 72-1 at ¶ 25]. The medical record for this encounter reflected that Plaintiff's only complaint from the pepper spray was "mild coughing" and that he was advised to shower and apply "clear water to eyes for irritation if needed." [Doc. 66-7 at 2].

After being seen in medical, Plaintiff was taken to segregated housing. There, he decided to claim an emergency sick call so that he could be examined, and have his injuries documented. He claimed that he might have a concussion and that he had "passed out." [Doc. 72-1 at ¶ 26]. After asking correctional officers several times, Plaintiff was finally seen by medical staff for an emergency sick call. [Id.]. At the emergency sick call visit, Plaintiff "debriefed [the nurse] and the sergeant on the incident and the injuries." [Id. at ¶ 27]. Plaintiff's injuries included three "knots/contusions" on the back of his head and bruised ribs. The nurse claimed she could not locate the

claimed injuries, despite painfully applying pressure to all the injured areas on Plaintiff's body. [Id.].

The Incident Report, which was prepared by Investigating Officer Jerry Ingram, provided as follows:

> According to the statements and the video footage of the incident all appear to be in agreement with each other. The video shows correctional staff removing [Plaintiff] from the Dining Hall and escorting him to Receiving. [Plaintiff] was placed in Receiving to conduct a complete search. The video does not show Officer Hunt administering O.C. Pepper to the facial area of [Plaintiff] due to there being no camera in the Holding cells. The video footage shows correctional staff removing [Plaintiff] from the Holding Cell to the shower area to be decontaminated. [Plaintiff] was removed from the shower area and escorted to Medical for assessment. Staff used only the necessary amount of force to obtain the correctional objective.

[Doc. 72-1 at 27]. As such, according to the Incident Report, there was no video footage of what occurred inside the Receiving cell, which is where Plaintiff contends excessive force was used. [See id.].

As a result of this incident, Plaintiff was charged with and pleaded not guilty to an infraction for profane language. [Doc. 66-4 at 1; Doc. 72-1 at 13-14]. Plaintiff provided a statement for the disciplinary proceeding against him that is consistent with his allegations here. [See Doc. 72-1 at 15]. A disciplinary hearing was conducted on August 13, 2018. [See id.].

Defendants Covington and Hunt denied that any hands-on physical force was used on Plaintiff and claimed that Defendant Hunt used pepper spray only. [Id. at 15-16]. The hearing record provides that, "the camera was reviewed for the date of the incident and it neither added to nor took away from the reporting party statement." [Id.]. Plaintiff's Disciplinary Infraction record provides, "Camera was viewed for 7/19/18 between 1500 hrs and 1540 hrs for chow hall and receiving." This record reiterates the claim that the footage "neither takes away nor adds to the reporting party's statement." [Doc. 72-1 at 39].

In Defendants' discovery responses, Defendant Covington claims that there is no video footage of the incident. He explains, "[t]he video originally attached to the incident report was not for the incident involving [Petitioner] on July 19, 2018. This was discovered only upon request for the incident report and the footage was unretrievable due to the amount of data storage available for the video. The video related to this incident no longer exists."[10,11] [Doc. 72-1 at 100 (emphasis in original)].

---

[10] NCDPS Use of Force Policy .1507(e)(2) provides, "All video tape recordings of use of force incidents will be transcribed to a master video, documented on a master tape ledger, and maintained for five (5) years. No master tape will be disposed of without consultation with the Attorney General's Office to determine if the tape should be preserved for litigation purposes." [Doc. 72-1 at 58].

[11] There is no explanation in the record regarding how video footage of the incident was viewed for the incident investigation and for Plaintiff's disciplinary proceeding, while

13

## IV. DISCUSSION

In support of their motion for summary judgment, Defendants argue only that they did not use excessive force on Plaintiff and that the Court cannot adopt Plaintiff's version of the facts here because his version "is blatantly contradicted by the record." [Doc. 65 at 5, 8-11]. Notably, Defendants do not argue that the Eleventh Amendment bars Plaintiff's official capacity claims. [See id.]. The Court will, nonetheless, address this issue. McRay v. Maryland Dep't of Transp., 741 F.3d 480, 483 (4th Cir. 2014) ("[B]ecause of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even *sua sponte.*") (citation omitted).

### A. Sovereign Immunity

A suit against a state official in his official capacity is construed as against the state itself. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). It is well settled that neither a state nor its officials acting in their official capacities are "persons" subject to suit under 42 U.S.C. § 1983. Id.; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). Moreover, the Eleventh Amendment generally bars lawsuits by citizens against non-

---

Defendants now claim the video attached to the Incident Report was not the correct footage and video of the incident no longer exists.

consenting states brought either in state or federal courts. See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).

Although Congress may abrogate the states' sovereign immunity, it has not chosen to do so for claims under 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 343 (1979). Likewise, North Carolina has not waived its sovereign immunity by consenting to be sued in federal court for claims brought under 42 U.S.C. § 1983. See generally, Mary's House, Inc. v. North Carolina, 976 F.Supp.2d 691, 697 (M.D.N.C. 2013) (claim under 42 U.S.C. § 1983 barred by sovereign immunity of North Carolina). As such, Defendants are entitled to summary judgment on Plaintiff's official capacity claims.

### B. Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component – that the harm inflicted was sufficiently serious – and a subjective component – that the prison official acted with a

15

sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

This subjective standard requires proof of malicious or sadistic action by a prison official to make out an excessive force claim. This is because prison "[o]fficials are entitled to use appropriate force to quell prison disturbances." Williams, 77 F.3d at 761. "Because officials must act 'in haste, under pressure, and frequently without the luxury of a second chance,' deliberate indifference is not a sufficiently rigorous standard." Id. (citing Whitley, 475 U.S. at 320). "Rather, in these circumstances, in order to make out an Eighth Amendment claim, a prisoner must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm." Id. (internal quotations and citation omitted).

Here, the relevant forecast of evidence shows that Defendants Barnes and Hunt used excessive force on Plaintiff. The forecast of evidence also shows that Defendant Covington, at best, failed to protect Plaintiff from harm and, at worst, directed the use of excessive force on Plaintiff by Barnes and Hunt. Specifically, the forecast of evidence shows that Plaintiff was maliciously assaulted and maced as the result of verbal provocation alone, which is strictly prohibited by NCDPS policy. Moreover, the forecast of evidence shows that Plaintiff was in restraints at all relevant times and never

16

acted aggressively towards Defendant or exhibited any resistance. As such, the manner of the use of force under the circumstances suggests that it was applied "maliciously and sadistically for the very purpose of causing harm" and not in a haste to "quell prison disturbance." Williams, 77 F.3d at 761.

While Plaintiff's version of events is contradicted by the balance of the record, the Court makes note of some of the inferences that arise from the Defendants' own forecast. The fact that Plaintiff was taken to a Receiving cell with a shower where no cameras were present gives rise to an inference that Plaintiff was taken to that location for the purpose of inflicting improper force. Moreover, the video footage of the events before and after the encounter in the Receiving cell was either never reviewed (and an erroneous official report was submitted to the Court) or was reviewed and has since disappeared, contrary to NCDPS policy. This, too, gives rise to an inference in favor of the Plaintiff that Defendants' forecast of evidence has been fabricated or spoliated. Even if the Defendants' conduct here was, in fact, innocent and ultimately without liability, these practices put the Defendants in the position that their Motion for Summary Judgment is without merit.

Because genuine issues of material fact remain for trial in this matter, summary judgment for Defendants Covington, Barnes, and Hunt on Plaintiff's individual capacity claims based on the use of excessive force is

17

inappropriate. As such, the Court will deny Defendants' motion for summary judgment.[12]

## V. CONCLUSION

In sum, for the reasons stated herein, the Court grants summary judgment for Defendants on Plaintiff's official capacity claims and denies summary judgment for Defendants on Plaintiff's individual capacity claims because genuine issues of material fact remain for trial as to those claims.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment [Doc. 64] is **GRANTED IN PART** as to Plaintiff's official capacity claims and **DENIED IN PART** as to Plaintiff's individual capacity claims against Defendants.

**IT IS FURTHER ORDERED** that:

(1) Plaintiff's "Motion Requesting to Withdraw Defendants' Motion for Summary Judgment" [Doc. 69] is **DENIED**;

(2) Plaintiff's "Motion to Extend the Deadline for Summary Judgment" [Doc. 70] is **GRANTED** and Plaintiff's response [Doc.

---

[12] Moreover, because Plaintiff has forecast evidence that Defendants violated his constitutional rights and because the right to be free from the use of excessive force by a prison guard was clearly established well before the subject incident, Defendants are not entitled to the defense of qualified immunity on Plaintiff's claims. E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018); See Hudson v. McMillian, 503 U.S. 1, 5-10, 112 S. Ct. 995 (1992).

71] is deemed timely.

(3) Plaintiff's Pro Se "Appendix Motion for Summary Judgment" [Doc. 72] is **DENIED** as moot.

The Clerk is instructed to substitute the true full names of Defendant FNU Barnes as Daniel Barnes and Defendant A. Hunt as Alford Hunt in the docket in this matter.

**IT IS SO ORDERED**.

Signed: June 21, 2021

Martin Reidinger
Chief United States District Judge